Our next case is Miller v. Department of Justice. Mr. Friedman. You want to reserve eight minutes for rebuttal? No. We can start out that way if there are questions that would... No, you've got to tell me beforehand how you want to do this. Yeah, I had figured seven minutes and then eight for rebuttal. Okay. You may proceed. Thank you. May it please the court. The administrative judge in this case issued a decision in which he had indicated that the agency provided a legitimate justification for the reassignment of Mr. Miller, who had been the superintendent of the industries, based upon the standard that is required under the whistleblower statute, which is the clear and convincing level of proof standard. And in so finding, the administrative judge relied on the testimony of one individual. That individual was Mr. Miller's supervisor, who was Warden Upton. Warden Upton provided testimony stating that he was justified to reassign Mr. Miller based upon discussions that he had with the Office of Internal... the Office of... Inspector General. Inspector General. Thank you. Who had informed him that Mr. Miller was to be taken out of his position as the superintendent of the industry. There was no other testimony. There was no other documentation. There was no other support. Let me ask you this hypothetically, because I'm trying to understand exactly what your issue with this case is. If that reason is true, if there was an OIG investigation and that the supervisor had been asked to reassign him so that he wouldn't interfere with the OIG investigation, would that provide a sufficient reason for the agency to establish by clear and convincing evidence that it took the personnel action for a reason other than whistleblower retaliation? Yes. So the reason itself, you agree, is sufficient. Yes. So we're just talking about... May I say that there... would that have been sufficient justification for the warden to take such an action? Under law, the Office of Inspector General has no supervisory authority over any staff personnel. So if the warden were to have said that and used that as a reason, that would have brought into question the warden's motivation. Right, right. I understand that. I'm just getting at this specific reason and whether the reassignment... It would be a good reason to reassign based upon a pending OIG investigation, if true. Okay. So your problem then is that it's hearsay. Correct. And not corroborated. So you say that because it's hearsay, it can only be for a preponderance of evidence under our decision in Cooley, and so it's not clear and convincing evidence. Do I understand that correctly? Well, I had cited a Supreme Court case, the case of Consolidated Edison Company of New York versus the NLRB. Is that an MSPB case? No, no. It's a Supreme Court case. I mean, isn't it kind of different in the MSPB? Because in the MSPB, the judge can rely on hearsay. It's just that at least our decision in Cooley and maybe some other things suggest that it's for a preponderance of evidence. Well, in an individual right of action, which is a whistleblower case, the agency must support its decision by clear and convincing evidence. I understand. Not simply by a preponderance of the evidence, but the Supreme Court... Getting the clear answer to Judge Scholl's question, are you arguing that hearsay evidence is not sufficient to meet a clear and convincing evidence standard? Uncorroborated hearsay evidence is correct. It's legally insufficient to meet the clear and convincing evidentiary standard. You agree that hearsay evidence can be used at the board. I mean, they've held that, we've held that. It's not even disputable at this point anymore, right? That is correct. So why is there any suggestion in the statute for IRA actions that hearsay evidence can't be used to establish a factual conclusion to support a clear and convincing evidence standard? Hearsay evidence can absolutely be used in order to support the clear and convincing evidentiary standard. But in order to determine whether there's a clear and convincing level of proof, one has to look at all of the evidence. Okay, I get that. So you're saying that it wasn't improper for the AJ to rely on this evidence. It was just not sufficient evidence for him to reach a clear and convincing conclusion. That is correct. And that was based not only on the fact that... But isn't your problem there that as a trier of fact, he gets to look at evidence before him? I think that the warden testified at length, right? And I think there was an opportunity for cross, right? And the AJ got to hear all this testimony and made a factual conclusion that in addition to the reassignment being directed by OIG, there was all the other evidence and the relevant card factors. And don't we review that for substantial evidence? Yes, correct. And substantial evidence is just evidence that a reasonable mind could rely on to reach a conclusion. After consideration of the record as a whole. Right. And if one were to consider... So my question then is, if you have the testimony, which seems to be pretty clear and consistent from the guy's supervisor, saying exactly why he took this action, and we have no reason to disbelieve it. I don't think you've challenged it as being a lie. Why isn't that substantial evidence? We have, or I have stated that the warden's testimony on corroborated hearsay is not credible, absolutely. And the reason why it's not credible is that there was no paperwork, there was no written assignment, there was no documentation from the Office of Inspector General. There was no evidence whatsoever. Did you ask the AJ to make a credibility determination? Pardon me? Did you ask the AJ to make a credibility determination? Your Honor, I didn't handle this at the hearing level, but I don't think that that is a requirement of an advocate. Well, I understand that, but on appeal we're at a pretty big disadvantage. If you're asking us for the first time to make a determination, that live testimony that the AJ heard and relied on, in his opinion, wasn't credible. I mean, what basis could we have for doing that? When the AJ is the one that heard the live testimony, your client's other counsel had the opportunity to cross and demonstrate the incredibility of that testimony, and the AJ didn't find it incredible. The sense of what I get is that if an administrative judge makes a determination on credibility that that's sacrosanct, that it's not subject to any type of review at all. Well, no, I'm not going that far. I mean, I know what our case law says on that. I mean, if an AJ makes a credibility determination that the record demonstrates is inherently implausible, then of course we can find that credibility determination incorrect. But what's inherently implausible about the warden's testimony here? What is inherently implausible is that the warden assigned Mr. Miller to make work for four and a half years, paying him at his GS-13 salary, which was a substantial salary, where for eight months he sat on a couch at the administrative offices doing absolutely nothing when he was wiping tables, when he was on the food line. Well, that may have not been particularly great assignments, but what's inherently implausible about that? I mean, you've been around this area a long time. OIG investigations can drag on for years, and if the reason was to get him out of his job because he was interfering with the investigation, then they've got to put him somewhere. And the warden testified very specifically about why he put him in various positions and then had to remove him from them because he was even still interfering. I don't find that inherently implausible. I find that you may disagree with it, but it seems like the warden was giving a very specific answer to both why he initially reassigned him and then reassigned him to other even more unpleasant or make-work jobs. The warden had absolutely no specificity whatsoever, zero specificity to anything that he testified to other than he was told by someone in OIG he didn't give any names, he didn't say when, he didn't give the substance of the conversation, and most importantly, OIG has no involvement over the supervisory management of staff. So all of those things point to the fact that the warden's testimony is not plausible and is not credible, even though the warden said it. How can one challenge someone's testimony other than to bring in facts and circumstances to show that the warden's testimony is just… Well, you challenge his credibility any other way. You ask him questions on cross or you depose him and see if there's illogical inconsistencies. I mean, the AJ didn't find any of this inconsistent. It found… I mean, your view that there's no details seems to be belied by his testimony, which has very detailed things about why his assignments were changed over the course of this period. I mean, it's not that he just willy-nilly said, well, I'm going to put you on the food services line and then I'm going to take you off and put you monitoring phone calls. And then he gave specific reasons for why he made each of those changes. Isn't that detailed consistency? Well, I do not recall the warden testifying giving specific reasons as to why he had been taken from job to job to a job. But even if the warden… For example, when he took him off the table duty, it was because there… He said that he was told to move him again because he was talking to people during the lunchtime that interfered with the investigation. And so… And he explained it in great detail. And so does that corroborate? The question is, does that, the fact that undoubtedly there was an investigation and then later there was the warden testified about Mr. Miller interfering with the investigation when he was on cafeteria duty and interfering with the investigation later when he was monitoring prisoner telephone calls. Does that corroborate the initial reason for why… Uncorroborated hearsay. That's all it is. But we've gotten beyond that point, right? You've agreed that the MSPB can rely on hearsay. The MSPB can rely on hearsay as a component… Even to support a clear and convincing evidence standard. As a component of the entire picture. But to say that an uncorroborated hearsay statement standing alone without anything else can support a clear and convincing standard, that is contrary to the rule. So in other words, you want us to impose a corroboration standard in these whistleblower cases when it's the testimony of a supervisor based on what you call hearsay. When the warden had the wherewithal… Have we done that in any other… I mean, do you have… I mean, we have a clear and convincing evidence standard in our patent cases. And we review those for substantial evidence, too. We don't have a heightened standard just because they're substantial evidence. I mean, it seems to me you're requiring us to impose a special burden here in the whistleblower case that's not traditional in our review of other MSPB cases. No, I am not. What I'm saying is that uncorroborated hearsay by one person to justify an adverse personnel action does not, as a matter of law, rise to the clear and convincing standard. So you are saying that hearsay cannot be clear and convincing evidence standing alone. I am saying that uncorroborated hearsay standing alone without any other evidence at all. Yes, that is what I'm saying, that uncorroborated hearsay standing alone cannot support the clear and convincing evidence standard, especially in the face of all of the evidence that I have mentioned in the brief. I want to ask you more questions. Okay. So what about the fact that there is an investigation ongoing already? So there's already an OIG investigation, and then there's the whistleblower activity. How does that play into it? I mean, the board seemed to mention that and emphasize it in its decision, the initial decision. AJ emphasized that several times as being in addition to the fact that there was the warden's testimony, that Mr. Miller was being reassigned because there was a concern he would interfere with the investigation. There was an investigation. Somebody else had already whistleblowed, I guess, and Melissa Ponzio, I guess, had already reported some activities. So how does that play into it, if there already was an investigation? Okay. How that plays into it is there's no evidence. There's zero documentary. You're not disputing today that there was an allegation. You're not disputing that there was an investigation, are you? No. There's zero documentary evidence. There's zero testimonial evidence except for the warden. That's all, and everything was uncorroborated hearsay. But the investigation was ongoing before the December 16th disclosure by Mr. Miller. You agree with that, right? OIG showed up on December 15th, and Mr. Miller stayed home from work that day. The next day he came back to work, and he reported what he viewed to be sabotage. But that was the day after OIG arrived, right? Mr. Miller testified that he was told to stay home by the warden because the OIG was coming in, and they didn't want Mr. Miller there at the same time. There is evidence of the warden's motive. Now, after evidence of the warden's motive that he didn't want Mr. Miller present while the OIG investigation was going, but on the 16th, Mr. Miller told the warden, Warden Upton, that he was going to contact the chief of contracting, the military chief of contracting. I just want to go back to my question for a minute because this case is really hard. So I'm just trying to figure out what to think here. What I had said is I said, what about the fact that the board relied on the existence of an investigation prior to the December 16th disclosure by Mr. Miller? You don't disagree that there was an investigation by OIG already, right? Your response was, oh, that's hearsay, hearsay. But there was an investigation that was already occurring before Mr. Miller's December 16th disclosure. My understanding of the board's decision was that the board concluded that Mr. Miller made protected disclosures and that there were adverse actions taken against him. The adverse action being that on December 16th, he was told that he was being removed as the superintendent of industry. So I think that he satisfied the two of the three components that he had to have satisfied. And then it was up to the agency to establish by clear and convincing evidence that taking him out of the position, notwithstanding the fact that there was an investigation going on, was justified by the clear and convincing evidentiary standards. Okay, I have one more question for you, very quick. I noticed that the case is Miller against the Department of Justice. And that the car factor, as I understand it, that second car factor is the existence and strength of any motive to retaliate on the part of agency officials who were involved in the decision. Yes. Who should those agency officials be? Should they be the warden? Should they be OIG? Why is the case against the Department of Justice? I mean, the warden is not an employee of the Department of Justice. So who was the decision maker here? The warden is not an employee. I don't think so. Is he an employee? Isn't the warden an employee of the Bureau of Prisons, which is a subcomponent of the Department of Justice? Oh, okay. I just didn't know. Okay. And the warden had a motivation to get Miller out of the position. And the motivation was that the warden needed to have the industry functioning. He needed to have the inmates working. And he was concerned that when Miller raised the issues of sabotage, the issues of the defective components of the Army helmets being intermixed with the good components, and that it could have affected the military members, he was concerned that there would have been a full-scale investigation and a shutdown of the function of manufacturing helmets. So there was a definite motivation. Mr. Friedman, that's okay. You exceeded your time, but it's due to our question and all. And I'll restore you to three minutes of rebuttal time, okay? Thank you. Mr. Norway? May it please the Court? This Court should affirm the Board's decision because it's supported by substantial evidence. I think the questions of Judge Hughes really hit the nail on the head. We're looking at here whether or not the appealee is challenging the factual determinations of the Board. And in the patent cases, in the patent context, you have a very clear, I guess, sharp description of the type of evidence that would meet this. And I'm just going to quote from the Juicy Whip case, 292, Fed 3rd, 728. And in that case, the standards of substantial evidence review of a jury finding is, a finding of fact must stand unless the appellant shows on the entirety of the record, including that which detracts from the weight of the favorable evidence, and taking into account the required quantum of proof that no reasonable fact finder could have made that finding. And here we have a decision of the Board that looked at the record as a whole and it made a reasonable determination. But there is no other evidence, is there, other than the phone call that Warden Upshaw had? I mean, there's no email that corroborates that phone call. There's no letters, meetings, or anything of that nature. You're correct, Your Honor, that there's no evidence of the substance of the conversation that the warden had with the OIG, especially the OIG conversation the day in December when he was asked to be removed from the factory premises. So that's all we have is a warden's recounting of his memory of, you know, what the conversation was about. Correct, but we do have corroborating evidence, as in the warden stated in December, that December day, to Mr. Miller why he was being asked to be removed from that. And that is recounted in Mr. Miller's email. But doesn't his email talk about the December 15th occurrence where he was asked to stay home for the day? Correct. That's what he discusses in his email. Correct. He doesn't discuss that the next day the warden told him that he was going to be reassigned permanently because there was a concern by OIG that he would interfere with the investigation. There's nothing like that. Not in the email, no. Correct, Your Honor. The warden does later testify that after he had a conversation with OIG in December, he then reached out and spoke with the UNIFCOR managers, specifically Mr. Booth, and they collectively made a decision to ensure that Mr. Miller was not brought back on the premises until, and I think this is the phrase he used, until this thing plays out. Why is it that with those other people being involved in making the decision, including OIG and the other folks that you just mentioned, why is it that the warden was the only one who testified? Well, Mr. Booth testified also, and he was Mr. Miller's supervisor from UNIFCOR, so he was sort of the reporting manager in the UNIFCOR side of the federal prison industries. But did he in any way corroborate the warden's decision? He did corroborate the testimony that goes to why the UNIFCOR's chain of command is separate from the warden's supervisory authority, and I'm looking at 450 to 456 in the record, and 488 to 489, and he also discussed a little bit of some of the collateral duties that Mr. Miller was assigned to, specifically that Mr. Miller was available to have, just like any other correctional officer. But he didn't talk about the meeting on December 16th where he talked to the warden and they talked about how the OIG had told the warden that Mr. Miller should be, or they requested or directed that Mr. Miller be reassigned. Mr. Booth never talked about that, right? Not that I can recall off the top of my head, Your Honor. I can look back at the record and file something after the hearing if you feel that would be helpful. I haven't seen anything, but okay. So we've been focusing on the December disclosure, but there was an October disclosure too. That is correct, Your Honor. And does that predate the OIG investigation? It's a little unclear in the record. I believe that it did not, but the— But we don't know. Correct. The record doesn't reflect that. Correct. The testimony about the October disclosure comes in through Mr. Miller's testimony,  It's a little unclear what happened in that October meeting because it was with Mr. Booth, and then later on in some of the papers there was a suggestion that the warden was also present during that October disclosure. But it could have been that the investigation, the OIG investigation, started after the October disclosure. That could be, Your Honor. But we don't know because the record's not complete on that.  Correct, Your Honor. And the board did not make a determination as to the timing of those two, I guess, disclosures that began— No, but they did make a recommendation, or they did find that the two disclosures met the timeliness requirement for a whistleblower disclosure. Correct, Your Honor. The board did make a determination that under the knowledge timing test, at least the initial October disclosure met the test, and that is why we're here today on the last part of the whistleblower case, and that is whether or not the Department of Justice demonstrated by clear and convincing evidence that it would have otherwise. So at that point, once the burden has shifted, shouldn't it have been the Department of Justice that should have come up with evidence to corroborate or to have cross-examined the warden on that particular point or to establish the record to back up Mr. Warden's recollection of the phone call? Well, the warden clearly testified about his recollection of what he was told, and he supported his reasoning, and I'm thinking at 582 in the record. He talked about removing Mr. Miller because he was worried about a compromise in the integrity of the investigation. That he was worried about that or that the OIG was? I don't recall off the top of my head what exactly the testimony was. The record's really not complete on that point either, is it? There is the testimony on that page that does talk about some of his reasoning for, some of the warden's reasoning for the reassignment, and we also have the warden's testimony on 567, where he was directly asked if he was intending to harass Mr. Miller with his reassignment, and the warden testified no. So we have evidence in the record about the reason. It is just testimonial reason. We don't have OIG emails directing the warden to do that. I'm sorry I'm interrupting you, but I want to make sure I ask this question. It seems to me that in four and a half years of being reassigned to different places, at some point a letter would have been sent to Mr. Miller formalizing his reassignment, as it was, for example, at pages A170 and 171 when he was reassigned after the factory closed down. In your experience, would there normally be a reassignment letter in circumstances like this? Well, Mr. Miller, prior to, and that's what I would point, the parts of the record that Your Honor just pointed to is what I would point to to demonstrate the employment decisions that were being made, because until then he was still a member of the executive committee of the medium of security prison at FCC Beaumont. He was still there. He was asked by the warden to stay outside of the prison walls, and there's testimony about that. So during that four and a half year period, did his position description change? Did he get any new SF-51s? No, Your Honor. What changed were his temporary job duties? Correct, Your Honor. And there is testimony from the warden where he describes when individual correctional officers are under investigation, that's generally the procedure they do. They'll ask them to go outside. They'll ask them to do invasion of the walls. So in those circumstances, there would not be any sort of written documentation of what was happening in those circumstances? I mean, the record doesn't reflect that, but you're suggesting that this is normal to not have a written record at all to reflect the different tasks that he was assigned to and why it was that he was being assigned to these tasks? My understanding is that there's no formal written record, and here we don't have any emails in the record at all. Is it your understanding there's an informal record on this? In this case, no, I have no understanding whatsoever, Your Honor, that there was any emails. There is an indication, I think on page 546 or 544, where the warden refers to some email communications, and it's unclear to me if he is referring to Mr. Miller's email communication or some other emails. Who made the decision to reassign Mr. Miller? Was it the OIG or was it the warden? The warden, Your Honor. And on what basis did the warden make that decision? The warden made the decision to reassign Mr. Miller because he was asked to do so by OIG. So OIG asked him to make the transfer? Or to take him out of his present duties and put him somewhere else? The warden was asked to remove Mr. Miller from the premises of the factory, so OIG... Okay, then after that, after he was transferred out of his regular duties, are you saying that OIG made that decision? And what decision is that, Your Honor? To transfer Mr. Miller, to take him out of being superintendent of prison industries, and to put him wherever else they put him? Monitoring prison phone calls or cleaning the tables at the mess hall? The collateral duties that were assigned to Mr. Miller were assigned to him by the warden. And there was a period... On what basis did he make that assignment? As he would assign collateral duties to any other correctional officer. No, but did he make that decision to make that assignment on the basis of what something OIG told him? To the particular collateral duties that were assigned, Your Honor? I guess I don't understand your question. Okay. The warden reassigned or assigned Mr. Miller outside of his regular normal duties, correct? Yes, Your Honor. Okay. On what basis was that reassignment made? And you're telling me that it was Warden Upshaw that made that decision? Correct, Your Honor. On what basis did he make that decision? In his capacity as the warden of the prison... No, no, not his capacity. Correct. On what basis? I mean, was it something that... Specifically, is it because OIG told him to do that? No, Your Honor. I don't think there's any indication in the record that OIG directed the warden to have Mr. Miller assign collateral duties. Then it's Warden Upshaw that made up his own mind that Mr. Miller was interfering with the investigations? Well, there were a series of conversations where the OIG informed... For instance, Judge Stoll mentioned the standing main line. The warden did testify that he was told by OIG that it had an indication that Mr. Miller was using that time to learn information about the investigation. So, learning that... Is that the same, or is that what you mean by interfering with the investigation? Well, learning of the... Yes, Your Honor. That's interfering with the investigation? Well, Mr. Miller was being interviewed by the OIG. He was being interviewed in the presence of AUSAs. He was having Miranda rights. Was he the only person being interviewed? No, in this record... There's other people being investigated? Yes, Your Honor. Do you know the scope of the investigation? Were there other people in other prisons also being investigated? I do not know the scope of the investigation, Your Honor. But in this case, it goes on from that. And the second one is the removal from the inmate telephone calls. I want to ask you again. You were talking about the burden of proof. And you cited the Juicy Whip case. And you said that this court, in the government's view, what this court has to do is look at whether there's substantial evidence taking into account the required quantum of proof. Correct. And so, in other words, as you said in your brief at page 15, we are supposed to see whether the Department of Justice proved by clear and convincing evidence that would have reassigned Mr. Miller, even in the absence of his protected disclosures. We have to look at whether that is supported by substantial evidence. So we have to consider the quantum of proof below when we're looking at substantial evidence? Is that the government's position? Yes, Your Honor. You take that into account when you're reviewing the record as a whole. And the review is that whether a reasonable fact finder could have made the factual finding that it did. And your view is, based upon the warden's testimony, that a reasonable fact finder could have believed the warden's testimony that he reassigned him because of these investigations and his continued interference with these investigations. And that's substantial evidence? Correct. Even though, arguably, you could have done a better job by providing corroboration for this testimony, unless we impose a corroboration requirement that doesn't appear to be in the law, his testimony can be substantial evidence. That is exactly correct, Your Honor. And here we have the warden. I'm sorry. Do you agree? What is your position on whether hearsay testimony alone can be clear and convincing evidence? Is it just as was said in Cooley that it can be accepted as preponderant evidence? Or could it also be accepted as clear and convincing? And if you think that it could be accepted as clear and convincing, what's your basis for that? Well, I think it can be accepted as clear and convincing. And it depends on the record as a whole. You're looking at the record as a whole and considering the correct quantum of proof, whether or not the board could reasonably reach its decision. And I'm just going to go through some hypotheticals. I mean, here we have a clear, consistent statement by the warden about the reason why he reassigned him. And we could have inconsistent testimony, for instance, or reasons to doubt the warden's credibility, which it could eventually lead this court along a spectrum to say, no, you can't accept that testimony under this quantum of proof. We don't have that here. Did the warden make the decision? And I know I've asked this again. I just want to be clear on this because this is important. Did the warden make the decision to make the reassignment based on a suggestion by OIG that he'd be reassigned? The initial reassignment from the factory, yes, Your Honor. Came from OIG? Yes. Okay. If Your Honors have no further questions for these reasons and the reasons that are brief, we ask that you affirm. Thank you, Your Honor. Mr. Friedman, I'm going to restore you three minutes for rebuttal. I appreciate that. I do want to address some matters that Judge Hughes raised when he said an administrative judge makes a factual determination based on the record, and if it's a reasonable, I'm characterizing it now, but a reasonable fact finder could find someone credible. And credibility involves a whole host of different issues. In this case, in order to get to the American Citizens Protection Board, an individual would have to have first contacted the Office of Special Counsel. The Office of Special Counsel has trained investigators.  They contact the agency. If the Office of Special Counsel declines to go forward with a whistleblower action, then the individual who brought the allegation to the Office of Special Counsel can file an appeal to the American Citizens Protection Board. The agency was represented by a skilled attorney. The agency has, I'm sure, had other whistleblower complaints filed against it. The agency had full knowledge of what its burdens were. The agency had full knowledge of what the standards were and what the obligations of the appellant were and the obligations of the agency. For the agency to act dumb and say the warden's testimony, which is unsubstantiated, even though we have the wherewithal to bring in whomever we wish to support or corroborate the warden's testimony. The problem is, isn't that a question for the AJ? Unless we adopt a rule that unsubstantiated testimony can't meet the clear and convincing evidence standard, then whether the AJ determines this testimony, which in your view is unsubstantiated is enough, is for that fact finder. But our review isn't to second-guess that de novo. It's assuming it's right or whether it's plausible. Is it substantial evidence? So as I understand what you're saying, Judge Hughes, you're saying that the agency's uncorroborated... I mean, I agree. They put themselves at the risk because they didn't put on very good evidence in this case. Or I wouldn't say they didn't put on very good evidence. They didn't put on evidence beyond the warden's testimony. And the warden's the guy that did the reassignments. It's understandable that they could have put in documents and the like. But what I gather you're saying is that an administrative judge who makes a decision as a reasonable fact finder that based on unsubstantiated, uncorroborated hearsay testimony can rise to the clear and convincing evidentiary standard. So hypothetically, I know there wasn't express credibility finding here, but suppose you had cross-examined him about whether he was lying or not and put that at issue. And the board judge said, I listened to his testimony. I've looked at all the facts and the records. Given that, I believe his story. His story was consistent, clear, and credible. Would that be sufficient evidence to support a clear and convincing evidence? No. So you want us to establish a rule that testimony without corroboration can't support the clear and convincing evidence standard? No, I do not want to establish an evidentiary rule. And even though an administrative judge... An administrative judge doesn't rule from on high. An administrative judge has to justify his or her ruling. For instance, if an administrative judge states, I looked into the eyes of the witness and I believe the witness was truthful, and that was the rationale that the administrative judge used, and totally disregarded all of the other evidence showing the implausibility of the witness's testimony, would that give rise to a finding which could have been sustained? What is the other evidence, though? It seems to me all you're doing is pointing to a lack of corroborating evidence. You're not pointing to any positive evidence that directly contradicts the word and story. It is the agency's burden to show by clear and convincing evidence. A burden is not established by unsubstantiated, uncorroborated hearsay evidence. And my last argument was that the Merit Assistance Protection Board concluded that Warden Upton's testimony was not hearsay. That is a clear error of law. And the Merit Assistance Protection Board based its decision to uphold the administrative judge's finding on the legal principle that Warden Upton denied. They denied the petition for review, though, right? So we're reviewing the AJ's decision, not the denial of the petition for review. It is my understanding that there is a review of the decision to see whether there was substantial evidence supporting the conclusion that the agency had shown by clear and convincing evidence that the reassignment was justified. Okay, go ahead. I just wanted to know, so if we were to affirm that's the end of the case, right? Now, if we were to, is that right? Yes. If we were to reverse or send the case back, let's just say we were to reverse, then what happens below? I mean, what's the remedy that Mr. Miller is seeking? Because he never changed job positions. He always had the same salary. So what is the remedy? Well, first of all, he has substantial counsel fees from the attorney who had represented him in the earlier case. And he obviously has attorney fees here. At this juncture, he is retired. But there was an appeal filed, and he was looking for a finding which would vindicate him. Okay. I mean, you mentioned fees. Look, I don't know how things work with whistleblower cases. Are you saying that there's something that if there's a finding in his favor that he gets his fees? Yes. That is correct. Okay. I think we have your argument, and hopefully you'll have a safe trip back home.  Right. Okay. All right. Well, that's the conclusion of today's arguments. We thank all counsel. We take all decisions under advisement. All rise.